UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JEFFREY SHAPIRO,                       :        13cv8647 (DLC)
                                       :
                    Plaintiff,         :
                                       :
          -v-                          :
                                       :        OPINION & ORDER
THE CITY OF NEW YORK, ROY A. ESNARD,   :
and JOHN and JANE DOE (said names      :
being fictitious, the persons intended :
being those who aided and abetted the  :
unlawful conduct of the named          :
Defendants),                           :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES

For plaintiff Jeffrey Shapiro:

Samuel O. Maduegbuna
MADUEGBUNA COOPER, LLP
30 Wall Street, 8th Floor
New York, NY 10005

For defendants City of New York et al.:

Zachary W. Carter
Corporation Counsel for the City of New York
100 Church St., Room 2-143
New York, NY 10007

DENISE COTE, District Judge:

    Plaintiff Jeffrey Shapiro ("Shapiro") sues defendants the

City of New York (the "City"), former supervisor Roy Esnard

("Esnard"), and others, alleging that he was demoted and refused

promotion because of his race, religion, and age.  He sues under

1

federal law -- 42 U.S.C. §§ 1981 & 1983 -- for race and religious discrimination.  He sues as well under state law, namely the New York Human Rights Law, as codified at N.Y. Executive Law § 296 et seq. ("NYSHRL") and the New York City Human Rights Law, as codified in the Administrative Code of the City of New York § 8-107 et seq. ("NYCHRL"), for race, religious, and age discrimination.[1]  The defendants have moved for summary judgment on all claims.  For the following reasons, the motion is granted.

**BACKGROUND**

Plaintiff Shapiro identifies himself as Orthodox Jewish. He has been employed for over 25 years as an attorney in the Office of Legal Affairs ("OLA") in the City of New York's Human Resources Administration ("HRA").  In early 2013, Shapiro was 60 years old and working as an Assistant General Counsel within the Commercial Law Division ("CLD") of that office.  He brings claims for discrimination due to his race, religion, and age based upon his demotion from that managerial position on March 29, 2013, and for the failure to promote him when another attorney was appointed in June 2013 to fill the vacancy created by his demotion.  Shapiro has sued the City and the General

---

[1] Plaintiff previously sued under Section 80 of the New York Civil Service Law, as well.  In his reply memorandum of March 9, 2015, plaintiff withdrew this claim.

Counsel for the HRA, Roy A. Esnard ("Esnard").  Defendants have moved for summary judgment on all claims, and argue as well that Esnard is entitled to qualified immunity.  The following facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

Shapiro began working for the HRA in 1988 as a Staff Attorney, and in 1991 was transferred to the CLD.  He was appointed to the position of Assistant General Counsel of CLD in May 2004.  His duties included delegating work to and supervising staff attorneys as well as interacting with executive staff and HRA officials.  Since 2006, Shapiro's immediate supervisor has been Edward LeMelle ("LeMelle").  In April 2007, Esnard was appointed to the position of General Counsel at HRA, where he oversaw the OLA, including the CLD. Esnard is also Jewish, but is not Orthodox.

In March of 2010, LeMelle informed Shapiro that his performance as Assistant General Counsel was unsatisfactory because, among other things, he failed to critically evaluate his subordinates' writing, was too lenient with attorneys in the department, and had repeatedly dozed off at meetings.  Before this point, and until February 2013, LeMelle never performed a written evaluation of Shapiro's performance, nor did he document his concerns.  LeMelle concedes that he should have doing so "all along."

In February of 2013, LeMelle prepared a memorandum critical of Shapiro's performance.  In that memorandum, LeMelle documented a number of his concerns, including that plaintiff was "a passive manager who is not willing to take any risks or show[] any initiative," that he was "simply not a reliable resource for the staff," and that he failed to complete or even attempt certain projects.  LeMelle sent his final memorandum to the head of OLA's Employment Law Division on February 12, 2013.  Esnard was forwarded the memorandum later that day.  After receiving the memorandum, Esnard demoted Shapiro.

The parties contest crucial details surrounding this memorandum.  Shapiro offers testimony from LeMelle that, in January 2013, Esnard told LeMelle that Shapiro failed to complete an assignment from the previous October.  Shapiro contends that he had timely completed the assignment and that the accusation was incorrect.  Shapiro has also offered evidence that, after this event, Esnard asked LeMelle to prepare a memorandum about Shapiro's performance and that Esnard demoted Shapiro after receiving the memorandum.  Shapiro contends that this shows that the memorandum was a "post-hoc rationalization" of Esnard's discriminatory decision to demote Shapiro; defendants, by contrast, offer evidence that the demotion proceeded on LeMelle's initiative.  They also offer evidence to show that upon starting the memorandum, LeMelle discussed its

contents with two other supervisors, including Esnard's First Deputy, but not Esnard himself.

LeMelle advised Shapiro of his demotion at a meeting on February 15, 2013.  Shapiro requested a meeting with Esnard, and they met on February 20.  Shapiro testifies that the reasons Esnard gave him for the decision differed from the reasons LeMelle gave him.  Among the reasons cited by Esnard were Shapiro's failure to force senior attorneys in the CLD to keep their doors open, which was not mentioned in LeMelle's memorandum.  Shapiro also claims that Esnard accused him of failing to complete the October assignment, but Esnard does not recall this.  Shapiro was formally notified of his demotion on March 29, to be effective April 1.

Shapiro applied for his former position when the vacancy was posted later that month.  Applicants to this position were evaluated by a three-person hiring committee; two of its members report directly to Esnard.  The committee interviewed many applicants from the OLA but did not invite Shapiro for an interview.  The committee arrived at a rank-ordered list of candidates that it presented to LeMelle; LeMelle reviewed the top five.  LeMelle ultimately chose Joanne Mihas, a non-Jewish woman in her mid-40s.  LeMelle recommended Mihas to Esnard. After reviewing the committee's file on Mihas and interviewing her himself, Esnard decided to appoint her as Shapiro's

replacement.

Shapiro's primary contention is that Esnard decided to demote him and refused to re-promote him because Shapiro is an Orthodox Jew.  Shapiro speculates that Esnard was motivated to do so because HRA was engaged in litigation with Jewish groups and had suffered adverse court rulings in two related cases litigated in 2011 and late 2012.  See U.S. ex rel. Feldman v. City of New York, 808 F. Supp. 2d 641 (S.D.N.Y. 2011); Strouchler v. Shah, 891 F. Supp. 2d 504 (S.D.N.Y. 2012).  It is undisputed that Shapiro had no role in any of this litigation. Shapiro has pointed to no conversation or other evidence suggesting that either Esnard or anyone else had any reason to connect Shapiro to the litigation.

Shapiro contends that Esnard previously made two comments to Jewish employees that are discriminatory.  A Jewish attorney at OLA has testified that Esnard called attention to her Kosher diet at an OLA holiday party -- the date and year are not in the record -- by offering that he eat the cheese on a slice of pizza and she eat the bread.  A former Jewish attorney at OLA testified that on one occasion in the 2000s Esnard asked him whether he had "made out like a bandit" at his daughter's Bat Mitzvah.

Shapiro relies as well on evidence that Esnard approved the demotion of two other Jewish employees, Ronald Whol ("Whol") and

Mark Rosenbaum ("Rosenbaum").  Rosenbaum was demoted in November
2013 at the age of 54 and replaced by a 38-year-old non-Jewish
employee.  No specific details have been offered as to Whol's
demotion.  Esnard originally hired Rosenbaum, and Rosenbaum
himself did not regard his demotion as discriminatory -- he
believes that "communication issues" and "a personality
conflict" with his immediate supervisors were the reasons for
his demotion.  Furthermore, two other older Jewish employees --
Carol Mirotznik ("Mirotznik") and Linda Bess ("Bess") -- testify
that they have been passed over for promotions during Esnard's
tenure as General Counsel, and Mirotznik states she has observed
only Jewish employees being demoted during Esnard's tenure.

Shapiro brought this action against defendants on December
5, 2013.  On February 6, 2015, following the completion of
discovery, defendants moved for summary judgment.  The motion
was fully submitted on March 30.

## DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show[ ] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "There is
no genuine issue of material fact where the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party."  Fabrikant v. French, 691 F.3d 193, 205 (2d

Cir. 2012) (citation omitted).  The moving party bears the
burden of demonstrating the absence of a material factual
question, and in making this determination, the court must view
all facts in the light most favorable to the non-moving party.
Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451,
456 (1992); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir.
2008).

Once the moving party has asserted facts showing that the
non-movant's claims or affirmative defenses cannot be sustained,
the opposing party must "set out specific facts showing a
genuine issue for trial," and cannot "rely merely on allegations
or denials" contained in the pleadings.  Fed.R.Civ.P. 56(e); see
also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).
"[C]onclusory statements, conjecture, and inadmissible evidence
are insufficient to defeat summary judgment," Ridinger v. Dow
Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation
omitted), as is "mere speculation or conjecture as to the true
nature of the facts."  Hicks v. Baines, 593 F.3d 159, 166 (2d
Cir. 2010) (citation omitted).  Only disputes over material
facts -- "facts that might affect the outcome of the suit under
the governing law" -- will properly preclude the entry of
summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).

In cases involving claims of employment discrimination "an

extra measure of caution is merited" at summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). Nonetheless, "[e]ven in the discrimination context[,] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014). Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

Shapiro's § 1981 and § 1983 race and religious discrimination claims are subject to the McDonnell Douglas burden-shifting standard. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (citation omitted). Under this analysis, "plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). As the Second Circuit recently explained,

> To state a prima facie case of race discrimination, a
> plaintiff must proffer evidence that (1) he belongs to
> a protected group; (2) he was qualified for his
> position; (3) his employer took an adverse action
> against him; and (4) the adverse action occurred in

9

> circumstances giving rise to an inference of race
> discrimination.

Kirkland, 760 F.3d at 225 (citation omitted).  The evidence

required to satisfy this initial burden is de minimis.

Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d

Cir. 2001).

> Once an employee makes a prima facie case,
>
> > the burden shifts to the employer to give a
> > legitimate, non-discriminatory reason for its actions.
> > If the employer does so, the burden then shifts back
> > to the plaintiff to show that the employer's
> > explanation is a pretext for race discrimination . . .
> > .  With respect to a discrimination claim, once the
> > employer has made a showing of a neutral reason for
> > the complained of action, to defeat summary judgment .
> > . . the employee's admissible evidence must show
> > circumstances that would be sufficient to permit a
> > rational finder of fact to infer that the employer's
> > employment decision was more likely than not based in
> > whole or in part on discrimination.

Kirkland, 760 F.3d at 225 (citation omitted).[2]  "[T]o defeat

summary judgment[,] the plaintiff is not required to show that

---

[2] The Supreme Court has held that the "express cause of action
for damages created by § 1983 constitutes the exclusive federal
remedy for violation of the rights guaranteed in § 1981 by state
governmental units," Jett v. Dallas Indep. Sch. Dist., 491 U.S.
701, 733 (1989), but it is unclear in this Circuit whether
subsequent federal legislation has allowed for actions against
municipal entities under § 1981.  See Anderson v. Conboy, 156
F.3d 167, 178 n.19 (2d Cir. 1998) (revised law "may be ambiguous
as to whether it creates an implied private right of action
against state actors under Section 1981, statutorily overruling
[Jett]."); see also Whaley v. City Univ. of New York, 555 F.
Supp. 2d 381, 401 (S.D.N.Y. 2008) ("The Second Circuit has not
yet ruled on this issue.").  It is assumed here that Jett
remains binding precedent.

the employer's proffered reasons were false or played no role in
the employment decision, but only that they were not the only
reasons and that the prohibited factor was at least one of the
motivating factors."  Garcia v. Hartford Police Dep't, 706 F.3d
120, 127 (2d Cir. 2013).  In evaluating a motion for summary
judgment where employment discrimination is alleged, courts are
obliged "carefully to distinguish between evidence that allows
for a reasonable inference of discrimination and evidence that
gives rise to mere speculation and conjecture."  Woodman v.
WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (citation
omitted).

> This undertaking is not one of guesswork or
> theorization.  After all, an inference is not a
> suspicion or a guess.  It is a reasoned, logical
> decision to conclude that a disputed fact exists on
> the basis of another fact that is known to exist.
> Thus, the question is whether the evidence can
> reasonably and logically give rise to an inference of
> discrimination under all of the circumstances.

Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir.)
(citation omitted), as amended on denial of reh'g (1999).

Merely satisfying the McDonnell-Douglas burdens, however,
will not "always be adequate to sustain a jury's finding of
liability."  Reeves v. Sanderson Plumbing Products, Inc., 530
U.S. 133, 148 (2000).

> Certainly there will be instances where, although the
> plaintiff has established a prima facie case and set
> forth sufficient evidence to reject the defendant's
> explanation, no rational factfinder could conclude

11

that the action was discriminatory.
Id.  Thus, "[e]ven where a plaintiff has demonstrated pretext,"
courts must not apply a per se rule; they "must instead employ a
case-by-case approach and examine the entire record to determine
whether the plaintiff could satisfy her ultimate burden of
persuading the trier of fact that the defendant intentionally
discriminated against the plaintiff."  Zann Kwan v. Andalex Grp.
LLC, 737 F.3d 834, 850 (2d Cir. 2013) (citation omitted).  Even
where an employee has "offered differing and thus apparently
pretextual explanations for [an employee's] termination,"
summary judgment may still be appropriate.  Id.

    Shapiro's discrimination claims under the NYSHRL and NYCHRL
are analyzed under different frameworks.  NYSHRL claims are
analyzed under the same McDonnell-Douglas rubric as their
federal counterparts.  See Ruiz v. Cnty. of Rockland, 609 F.3d
486, 491 (2d Cir. 2010) (race discrimination); Mandell v. Cnty.
of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (religious
discrimination); Gorzynski v. JetBlue Airways Corp., 596 F.3d
93, 106 (2d Cir. 2010) (age discrimination).[3]  With regard to age
discrimination claims, in order to rebut an employer's neutral
reasons, an employee must show that age was a "but-for" cause of
the adverse action, not merely a motivating factor.  Delaney,

---

[3] Shapiro has not brought a federal age discrimination claim
under the Age Discrimination in Employment Act.

766 F.3d at 168.[4]

NYCHRL claims, on the other hand, must be analyzed "separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). "[E]ven if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Velazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015). Under the NYCHRL, courts consider "the totality of the circumstances" and "the overall context in which the challenged conduct occurs." Mihalik, 715 F.3d at 113. "[S]ummary judgment is still appropriate in NYCHRL cases, but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." Id. On summary judgment, however, a plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive." Id. at 110.

---

[4] The Second Circuit assumed without deciding in Delaney that this federal standard would apply to cases under the NYSHRL, and that assumption is likewise made here.

I. Race and Religious Discrimination

Shapiro's claims that Esnard discriminated against him on the basis of race and religion are made pursuant to both federal and state law.  In addition to his individual claims against Esnard, he sues the City of New York under § 1983.  Each is addressed in turn.

A. Individual Liability

Shapiro alleges that he was wrongly demoted and denied promotion because he is Jewish, a characteristic that can establish a colorable claim of both race and religious discrimination.  See, e.g., United States v. Nelson, 277 F.3d 164, 177 (2d Cir. 2002).  In this, Shapiro has satisfied three of the four elements of his prima facie case.  It is undisputed that he is a member of the protected classes at issue (the Jewish race and faith); that he was subject to adverse employment decisions; and that he has carried his prima facie burden of showing that he was qualified for his position.  The parties dispute whether Shapiro has offered sufficient evidence to show whether the circumstances in which the decisions were made give rise to a reasonable inference of discrimination.

1. Shapiro's Theory

Shapiro's principal argument that Esnard harbored race and religious animus is based on a theory that is entirely speculative.  Shapiro claims that Esnard was upset after a

14

series of adverse court decisions in 2011 and 2012, and that because some of the plaintiffs and attorneys in that litigation were Jewish, Esnard decided to retaliate against Shapiro because he couldn't "take revenge" on the litigants but still believed "somebody ha[d] to pay."  This dramatic narrative finds insufficient support in the evidence presented.

　　To begin with, Shapiro has not shown that Esnard was involved in any extraordinary way in the litigation alleged to have motivated his discriminatory action.  As General Counsel of the HRA, Esnard oversaw the OLA and its representation of the City in these actions.  Shapiro offers scant admissible evidence that Esnard was involved or interested in this litigation beyond the interest a General Counsel would show in any case: One witness has offered an account of a meeting where Esnard seemed "upset" and blamed the state's witnesses and the presiding judge for the lack of success in the case.  More to the point, Shapiro offers no evidence that Esnard felt or expressed any hostility, anger, or for that matter anything at all toward the Jewish participants in the litigation.[5]

　　Furthermore, Shapiro himself had no professional

---

[5] While Shaprio argues that Esnard "was highly and openly critical of the involvement of Jews and Orthodox Jews, as whistleblowers and plaintiffs in proceedings against HRA," his citations for that proposition are a paragraph of the Complaint and deposition testimony on Esnard's involvement in the case generally.

involvement in -- or any substantial connection at all to -- the litigation.  He has offered no evidence to explain why Esnard would seek revenge against him due to conduct with which Shapiro had no connection.  All he cites to raise the specific inference that the litigation was linked to his demotion is the "timing of events."  Mere timing, however, is inadequate for that purpose. The latest legal decision allegedly actuating Esnard's animus was in October of 2012; Esnard's "false accusation" that Shapiro had failed to complete an assignment was in January 2013;[6] and the memorandum regarding Shapiro's performance was prepared in February 2013.  Absent any other evidence connecting the litigation to Shapiro, concluding that a court decision in October led Esnard to falsely claim in January that Shapiro had not completed an assignment and then order a justification prepared for his dismissal in February is pure "speculation and conjecture," not a "reasonabl[e] and logical[]" inference from the evidence.  Woodman, 411 F.3d at 75; Bickerstaff, 196 F.3d at 448.  As such, timing alone cannot give rise to the requisite inference.

Even less plausible is Shapiro's theory that his failure to be promoted to his previous position is attributable to Esnard's

---

[6] Shapiro also offers no evidence to show that Esnard's "accusation" regarding the project was in bad faith.  This "fact," too, is based on speculation.

animus.  First, Shapiro ignores the salient fact that he was
just demoted from that position.  More importantly, he lacks any
evidence of bias in the vetting, assessment, and selection
process.  This process was conducted by a three-person interview
panel that ranked five applicants, and by LeMelle, who
ultimately recommended a candidate to Esnard.  For instance,
Shapiro has not presented any evidence from which a jury could
conclude that the process failed to promote the most qualified
candidate in the applicant pool.

2. Esnard's Other Acts

The other evidence Shapiro offers to show Esnard's animus
is insufficient to salvage these claims.  Two Jewish employees
state that Esnard made insensitive remarks them concerning their
faith:  The first alleges that Shapiro asked him whether he
"made out like a bandit" at his daughter's bat mitzvah; the
second that Shapiro called attention to her kosher diet.  But
standing alone or considered alongside the "timing of events,"
these remarks carry little weight.  "The more remote and oblique
the remarks are in relation to the employer's adverse action,
the less they prove that the action was motivated by
discrimination."  Tolbert v. Smith, No. --- F.3d ---, 2015 WL
3875237, at *7 (2d Cir. June 24, 2015).

> In determining whether a remark is probative [of
> discriminatory intent], [courts] consider[] four
> factors: (1) who made the remark (i.e., a decision-

17

maker, a supervisor, or a low-level co-worker); (2)
when the remark was made in relation to the employment
decision at issue; (3) the content of the remark
(i.e., whether a reasonable juror could view the
remark as discriminatory); and (4) the context in
which the remark was made (i.e., whether it was
related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

Applying this test here is instructive.  Esnard is, of
course, the source of the remarks at issue.  As to the content
of the remarks, "[t]he relevance of discrimination-related
remarks does not depend on their offensiveness, but rather on
their tendency to show that the decision-maker was motivated by
assumptions or attitudes relating to the protected class."
Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 116 (2d Cir.
2007), abrogated on other grounds by Gross v. FBL Fin. Servs.,
Inc., 557 U.S. 167, 177–78 (2009).  While Esnard's remarks may
have been tone-deaf, they do not reflect "assumptions or
attitudes" about Jewish people that could reasonably be found to
have motivated unfavorable employment decisions.  The other
factors likewise cut against probativeness.  The remarks in
question bear no relation to Shapiro's demotion, and occurred in
completely different contexts:  Shapiro has not offered evidence
of the date of one of the incidents, but the other was many
years removed from both Esnard's alleged principal motivation --
the outcome of two lawsuits involving Jewish groups -- and the

18

alleged discriminatory action against Shapiro.[7]  The remarks are
not probative of animus.

Nor do the two other examples of demotions Shapiro cites
tend to support a reasonable inference of discriminatory motive.
Rosenbaum and Whol, whom Esnard ultimately demoted, were both
originally <u>hired</u> by Esnard.  "[W]hen the person who made the
decision to fire was the same person who made the decision to
hire, it is difficult to impute to her an invidious motivation
that would be inconsistent with the decision to hire."  <u>Grady v.
Affiliated Cent., Inc.</u>, 130 F.3d 553, 560 (2d Cir. 1997).  And
Rosenbaum himself did not regard his demotion as discriminatory
-- he believes that "communication issues" and "a personality
conflict" with his immediate supervisors were the reasons for
his demotion.

### 3. Disparate Treatment

Shapiro argues that an inference of discrimination may
arise from the fact he was treated differently than LeMelle, a
"similarly situated employee."  "A showing of disparate
treatment -- that is, a showing that an employer treated

---

[7] Shapiro also adduces evidence that an OLA employee cautioned
Esnard at some unidentified time about making insensitive
statements irrelevant to the claims here; a statement made by one
of Esnard's subordinates; and a separate lawsuit against the
HRA in which Esnard testified.  None of this evidence,
considered either separately or together, would permit a jury to
find that Esnard intentionally discriminated against Shapiro.

plaintiff less favorably than a similarly situated employee outside his protected group -- is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case."  Ruiz, 609 F.3d at 493-94.  To be "similarly situated," a plaintiff and the comparator employee must have been "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." Id.

LeMelle was not "similarly situated."  For one thing, he was Shapiro's immediate supervisor; Shapiro has offered no evidence to show that he and his supervisor were subject to the same standards of performance and discipline.  Nor is there credible evidence LeMelle engaged in "comparable conduct." Shapiro only claims that LeMelle, like Shapiro, "had the same -- if not greater duty -- to control the senior attorneys and force them to keep their office doors open."  Shaprio, however, has not offered any evidence that this was the case.  There is likewise no evidence that LeMelle engaged in any of the conduct -- lack of initiative, lenient supervision, and specific failures on the job -- cited as justification for Shapiro's dismissal.  Accordingly, Shapiro cannot rely on the "disparate treatment" theory to raise an inference of discrimination.

4. Apparent Pattern of Discrimination in HRA

Finally, Shapiro seeks to raise an inference of

20

discrimination by showing a pattern of disfavor towards Jewish employees in the HRA.  He does so with the testimony of two OLA employees -- Mirotznik and Bess -- both of whom are Jewish and both of whom claim to have experienced and observed discrimination in the HRA.[8]  Mirotznik and Bess both testify about their own experiences of being passed over for promotions in favor of younger employees.  In addition, Mirotznik testifies that "from what [she] can see the only people who were demoted were Jewish" and that the same was true of "many of the [employees] that have not been promoted."  Similarly, Bess testifies that she believes Shapiro was demoted in part because of his religion and that "one by one for some reason the Jews -- Jewish lawyers are systematically being eliminated from the unit."  While Mirotznik's and Bess's testimony about their own employment experiences is straightforwardly admissible, their latter testimony as to Esnard's discriminatory intent specifically and discriminatory patterns in the HRA more generally is lay opinion and as such subject to more rigorous

---

[8] It bears noting that Mirotznik's and Bess's testimony does not sit easily with Shapiro's account of the demotion.  This testimony is introduced to show Esnard's "pattern of adverse acts against older and Jewish attorneys at HRA," yet Shapiro says his demotion was Esnard's response to setbacks in two important lawsuits in 2011 and 2012.  There is no attempt to connect, temporally or causally, these employees' perceptions to the specific lawsuits that allegedly motivated Esnard's behavior.

screening.

The admissibility of lay opinion testimony is governed by
Federal Rule of Evidence 701(b), which provides that,

> [i]f a witness is not testifying as an expert,
> testimony in the form of an opinion is limited to one
> that is:(a) rationally based on the witness's
> perception;(b) helpful to clearly understanding the
> witness's testimony or to determining a fact in issue;
> and(c) not based on scientific, technical, or other
> specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701(b).  In an employment discrimination action,
"[w]itnesses are free to testify fully as to their own
observations of the defendant's interactions with the plaintiff
or with other employees," but "Rule 701(b) bars lay opinion
testimony that amounts to a naked speculation concerning the
motivation for a defendant's adverse employment decision."
Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000).  Bess's
testimony about the reasons for Shapiro's demotion and the
"systematic eliminat[ion]" of Jewish lawyers from the unit is
just this sort of impermissible "conclusory lay opinion[] given
at deposition."  Id.  As it asserts, without support, that
Esnard's actions had discriminatory intent, her testimony to
this effect is inadmissible.

Mirotznik, for her part, grounds her opinion in her own
observations about personnel decisions in the HRA.

> Q: In the course of your employment at HRA and within
> the office of legal affairs, have you witnessed any
> act or conduct that you consider to be discriminatory

22

> towards employees of Jewish ancestry?
>
> A: Yes, I -- from what I can see the only people who
> were demoted were Jewish.  And actually, many of the
> ones that have not been promoted like Stuart
> Schoenberger, Suzanne Gottlieb Solomon, myself, are
> Jewish, longstanding employees.  I believe Robert
> Drapkin was Jewish.  They -- the one that I mentioned
> before who is no -- who did retire.

This testimony, by contrast, does satisfy Rule 701(b).

Mirotznik's observation that, "from what [she] can see," a

pattern of discrimination exists is supported by statements that

demonstrate the opinion is "rationally based on [her]

perception[s]."  "Evidence of general patterns of discrimination

by an employer is relevant even in an individual disparate

treatment case."  Lieberman v. Gant, 630 F.2d 60, 69 (2d Cir.

1980) (citation omitted).

Ultimately, however, Mirotznik's testimony is insufficient

to raise an inference of discrimination.  "Although statistics

play a much more substantial role in disparate impact cases,

they are admissible to support a claim of discrimination even in

a disparate treatment case involving a single plaintiff."

Stratton v. Dep't for the Aging for City of New York, 132 F.3d

869, 877 (2d Cir. 1997).  Here, Shapiro has presented no

statistics, employment records, or other objective evidence to

bolster Mirotznik's opinion regarding a pattern, let alone show

an inference of discriminatory intent behind it.  Mirotznik's

lay opinion that "the only people who were demoted were Jewish"

and that "many" of those not promoted were, too, based on her
admittedly limited knowledge and "belie[fs]," cannot standing
alone provide sufficient basis for any reasonable jury to infer
intentional discrimination.[9]  Accordingly, Shapiro cannot make a
prima facie showing of race and religious discrimination, and
his claim fails.

Because Shapiro has failed under that framework to
establish a prima facie case of race and religious
discrimination, his claims under Section 1983 and the NYSHRL are
dismissed.  And, although the NYCHRL embodies a somewhat looser
standard, "[t]he plaintiff still bears the burden of showing
that the conduct is caused by a discriminatory motive."
Mihalik, 715 F.3d at 110.  Considering "the totality of the
circumstances" and "the overall context in which the challenged
conduct occurs," Mihalik, 715 F.3d at 113, cannot make the
admissible evidence Shapiro actually adduces any less
threadbare.  His NYCHRL claim, therefore, cannot survive summary
judgment.

---

[9] Moreover, there is countervailing evidence on the record.
Shapiro has admitted that there are, in fact, Jewish managers in
the OLA, and that Esnard has promoted Jewish employees to
positions of management.  His explanation that these are
"tokens," and that Esnard "keep[s] some Jewish managers around
and some older managers around in order to safeguard him" veers
far into the realm of conjecture.

B. Section 1983 Claim Against the City of New York

Shapiro also sues the City of New York under a theory of municipal liability.  As established in <u>Monell v. Dep't. of Social Servs. of City of N.Y.</u>, 436 U.S. 658 (1978), Section 1983 permits plaintiffs to sue municipalities where a policy or custom of the municipality caused the deprivation of their federal constitutional rights.  <u>Id.</u> at 690-91.  Specifically, Shapiro alleges that the City has failed to train its employees concerning "equal opportunity," and that this failure to train constitutes the City's "deliberate indifference" to his constitutional rights.  <u>See, e.g.</u>, <u>Cash v. Cnty. of Erie</u>, 654 F.3d 324, 333-34 (2d Cir. 2011).

Shapiro has failed to carry his burden of showing that there was a pattern or practice of demoting or failing to promote Jewish employees in the HRA, and thus cannot establish any violation of constitutional rights.  Accordingly, there is no genuine dispute of material fact as to whether a <u>de facto</u> custom or policy of race and religious discrimination existed in the OLA, and defendants' motion for summary judgment on Shapiro's <u>Monell</u> claim is granted.

II. Age Discrimination

As with his claims of race and religious discrimination, Shapiro has satisfied three elements under the <u>McDonnell-Douglas</u> framework's <u>prima facie</u> test.  It is undisputed that Shapiro is

25

a member of the protected group,[10] that he suffered an adverse
employment action, and that he has carried his burden of proving
he was qualified for the position.  Here, too, Shapiro has not
presented sufficient facts for a reasonable jury to conclude
that the circumstances "give rise to an inference of
discrimination."  See Gorzynski, 596 F.3d at 107.

Shapiro relies largely upon lay opinion testimony for his
age discrimination claim.  For example, Shapiro has presented no
data reflecting the ages of supervisors in OLA or CLD, or the
ages of the employees in those offices that were demoted and the
ages of their replacements.  He points to no comments by Esnard
reflecting age-related bias.  Instead, he again offers the
testimony of Mirotznik and Bess.

Mirotznik, who is 62, testifies that because of her age she
was only allowed to do "grunt work," that "there is a strata of
older attorneys who are . . . never promoted," and that
"[r]epeatedly[,] younger attorneys are hired and promoted . . .
over the older, more experienced attorneys."  In similar
fashion, Bess, who is 67, testifies that she has observed a
"very consistent" pattern under Esnard of younger and less
qualified individuals being selected for positions in the OLA
instead of older, more qualified ones.  Beyond a few

---

[10] The relevant protected class is "those who are 40 or older."
Woodman, 411 F.3d at 78.

unpersuasive anecdotes, however, neither witness provides the
names or ages of the employees to whom they are referring.  Read
in context, this deposition testimony is insufficient to
establish the existence of a pattern of discrimination from
which discriminatory intent may be inferred.

Furthermore, the only specific examples of allegedly
discriminatory age demotion that Shapiro cites are inconsistent
with Mirotznik's and Bess's accounts of systematic
discrimination.  Rosenbaum, for example, was 51 or 52 when
Esnard promoted him, years older than the ages of the employees
by whom many of the demoted employees were replaced.  As Shapiro
concedes, there "may be" older managers within OLA, albeit
employees whom Shapiro characterizes as "token."

Shapiro has not introduced evidence sufficient to raise an
inference of age discrimination under the NYSHRL or the NYCHRL;
accordingly, he cannot show that his demotion and subsequent
denial of promotion were caused by a discriminatory motive.
Mihalik, 715 F.3d at 110.  Defendants' motion for summary
judgment is granted on these claims as well.

III. Shapiro's Ultimate Burden

Even assuming arguendo that Shapiro could make out a prima
facie case of race, religious, and age discrimination,
defendants have carried their burden to articulate a specific
non-discriminatory reason for demoting and then declining to

27

promote Shapiro.  Defendants offer ample documentary evidence
that Shapiro's deficiencies as a supervisor were the grounds for
his demotion.  In March of 2010, LeMelle informed Shapiro that
his performance was unsatisfactory because, among other things,
he failed to critically evaluate his subordinates' writing, was
too lenient with attorneys in the department, and had repeatedly
dozed off at meetings.  In January 2013, at Esnard's request,
LeMelle prepared a memorandum summarizing Shapiro's performance.
In the memorandum, LeMelle documented a number of his concerns,
including that plaintiff was "a passive manager who is not
willing to take any risks or show[] any initiative," that he was
"simply not a reliable resource for the staff," and that he
failed to complete or even attempt certain projects.  This
evidence is sufficient to satisfy the requirement.  See, e.g.,
Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 93 (2d Cir.
2001) ("dissatisfaction with [plaintiff's] performance" is "a
legitimate, nondiscriminatory reason for [his] discharge").

     Assuming further that Shapiro were able to make a prima
facie case, once defendants have articulated a legitimate, non-
discriminatory reasons for Shapiro's demotion and non-promotion,
"the factual inquiry proceeds to a new level of specificity,"
and the burden shifts to Shapiro to show a genuine dispute as to
whether those reasons were pretexts for discriminatory
treatment.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S.

248, 255 (1981).  Pretext may be shown by evidence that, for example, "the employer's proffered explanation is unworthy of credence."  Id. at 256.  Such evidence may be bolstered by evidence used to show a prima facie case.  Id.

Shapiro argues that discrepancies in defendants' justifications for Shapiro's demotion indicate a pretext. "Inconsistent explanations" and "discrepancies" may allow "a reasonable juror [to] infer that [an employer's] explanations . . . were pretextual."  EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994).  "In . . . Ethan Allen, the employers gave two completely different explanations for their decisions to terminate their employees, and such a substantial change in position supported an inference of pretext."  Fatemi v. White, 775 F.3d 1022, 1048 (8th Cir. 2015).  Shapiro argues that the issues LeMelle raised in the January 2010 meeting were materially different from those in the February 2013 memorandum and March 2013 meeting.  The record, however, shows otherwise; the core concerns LeMelle expressed about Shapiro -- his shortcomings as a supervisor and his lack of initiative -- never changed.  "[T]he putative non-discriminatory purpose[s]" were not "stated only after the allegation of discrimination"; far from "fundamentally different justifications," they were consistent for three years.  Ethan Allen, 44 F.3d at 120 (citation omitted).

29

But, assuming that Shapiro had presented evidence of pretext, a court must still "examine the entire record to determine whether the plaintiff could satisfy her ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Zann Kwan, 737 F.3d at 850.  As the foregoing makes clear, the evidentiary record cannot support such a conclusion.  Because Shapiro has not adduced sufficient evidence of Esnard's discriminatory intent to defeat summary judgment, it is unnecessary to reach Esnard's assertion of qualified immunity.

CONCLUSION

Defendants' February 6, 2015 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:    New York, New York
          July 1, 2015

                              _____
                              DENISE COTE
                        United States District Judge

30